**Appeal Number: 22-13675-BB**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

**JAYNE' SWINFORD
Plaintiff-Appellant,**

**v.**

**JOSHUA SANTOS, et al.**

**Defendants-Appellees.**

**On Appeal from the United States District Court
For the Middle District of Georgia, Athens Division
Civil Action No. 3:21-cv-00090-CAR**

PETITION FOR PANEL REHEARING

**JOHN BAKER
John Baker Law**
Ga. Bar. No. 033797
1551 Jennings Mill Rd.
Suite 3100B
Watkinsville, GA 30677
*Counsel for Appellant Jayne' Swinford*

# APPELLANT JAYNE' SWINFORD'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Jayne Swinford ("Mrs. Swinford") identifies and certifies the following list of persons and entities pursuant to pursuant to 11th Cir. R. 26.1-1 *et seq*:

Santos, Joshua (Appellee/Defendant);

Bidinger, Charles (Appellee/Defendant)

Williams, Roger Oliver, Jr. (Appellee/Defendant)

McIlvaine, Jonathan (Appellee/Defendant)

Leder, Richard Alexander (Appellee/Defendant)

Johnson, Claude (Appellee/Defendant)

Greenlow, William (Appellee/Defendant)

Spruill, Cleveland (Appellee/Defendant)

Athens-Clarke County, Georgia (Appellee/Defendant)

Swinford, Jayne (Appellant/Plaintiff)

John Hollis Baker, Esq. (Counsel for Appellant/Plaintiff)

Choy, Sun. S. (Counsel for Appellees/Defendants)

Freed, Philip Michael (Counsel for Appellees/Defendants)

Royal, Ashley C. (District Court Judge)

I.  INTRODUCTION

Appellant seeks a rehearing solely relating to the Panel's disposition of Appellant's excessive deadly force claims, which were asserted **_separately_** against seven police officers. A rehearing is required in this case because the – like the trial court – the Panel issued an Opinion that compared the wrong bodycam videos to the allegations contained in the wrong version of the complaint.[1] (See Opinion, fn. 10 at 17-18)  As a result, unless this case is reconsidered, the Panel's unlawful disposition of Appellant's claims **on the merits** in violation of controlling law – **at the dismissal stage** – amounts to the abetment of a violation of Appellant's 7th Amendment right to a civil jury trial.  That is of particular concern for a case that involves the unwarranted killing of a human being by shooting him in the back while he was disarmed and lying down on his face motionless after any conceivable immediate threat had already been extinguished.

---

[1] Although the Panel made it clear in its Opinion that it disregarded controlling law when it engaged in a dismissal analysis of allegations in the complaint originally filed instead of the version proposed to amend it, the Panel never confirmed or denied whether it actually reviewed the shooting incident from the bodycam videos recorded by the officers who shot and killed Thomas Swinford. (rather than unauthenticated videos captured by other officers on the scene from further distances away) That is alarming, given that Ms. Swinford offered a comprehensive "shot by shot" breakdown of the shots taken by each respective officer asserting qualified immunity in the amended complaint attached to her motion requesting leave to amend for purposes of a separate analysis of the existence of an immediate threat for each shot fired by each officer as much as four seconds after Swinford was rendered disarmed and motionless flat on his face. The Panel's Opinion refers to a single "volley" of shots taken as much as four seconds after Swinford was rendered helpless and disarmed based on a viewing of videos other than those actually "central" and "incorporated by reference" into the complaint, as amended. That is an astonishing slippery slope the Panel had no authority to visit without invading the exclusive province of a jury, based on the Federal Rules of Civil Procedure and Seventh Amendment.

II.     ERRORS OF LAW IN OPINION

The decisions of this Circuit that have *always* construed Foman to hold that "denial of leave to amend is justified by futility when the ***complaint as amended*** is still subject to dismissal." Brooks v. Warden, 800 F.3d 1295, 1300 (11th Cir. 2015) (emphasis added)  In other words, according to seemingly every case ever published in this Circuit that addressed the "futility" issue, the Panel was required to conduct a *de novo* review of the trial court's dismissal as ***"if the amendment were allowed."*** Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (emphasis added) See also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 764 F.3d 1327, 1344 (11th Cir. 2014); Wade v. Daniels, 36 F.4th 1318, 1328 (11th Cir. 2022); Bryant v. Dupree, 252 F.3d 1161, 1164 (11th Cir. 2001); Evans v. Georgia Reg'l Hosp., 850 F.3d 1248, 1254 (11th Cir. 2017); Taveras v. Bank of Am., N.A., 89 F.4th 1279, 1289 (11th Cir. 2024); Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co., 945 F.3d 1150, 1163 (11th Cir. 2019); Equal Emp. Opportunity Comm'n v. STME, LLC, 938 F.3d 1305, 1320 (11th Cir. 2019); Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1093–94 (11th Cir. 2017); Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 864 (11th Cir. 2017); Cockrell v. Sparks, 510 F.3d 1307, 1312 (11th Cir. 2007); Tuten v. Gause, No. 22-11940-A, 2022 WL 20033238, at *2 (11th Cir. Dec. 27, 2022); Daker v. Almand, No. 21-10618, 2023 WL 4743749, at *4 (11th Cir. July 25, 2023); Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010); St.

Charles Foods, Inc. v. Am.'s Favorite Chicken Co., 198 F.3d 815, 822–23 (11th Cir. 1999); Silberman v. Miami Dade Transit, 927 F.3d 1123, 1133 (11th Cir. 2019); Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 777 (11th Cir. 2000); Harris v. Ivax Corp., 182 F.3d 799, 807–08 (11th Cir. 1999); Sibley v. Lando, 437 F.3d 1067, 1073 (11th Cir. 2005); Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262–63 (11th Cir. 2004)

**Although the Panel was required to look to the allegations of the proposed amended complaint** – and its exhibits – when conducting a de novo review of dismissal of all claims, it admittedly did otherwise.  (See Opinion, fn. 10) To the degree *any* bodycam videos were appropriately incorporated by reference, the Panel based its decision on videos that were presented by defendants, rather than those videos "central" to the allegations in the proposed amended version of the complaint and the "shot by shot" description therein of all shots taken by the respective officers when Thomas Swinford was killed.    (i.e. "Defendant Santos" (two rounds while Thomas was already on the ground); "Defendant Bidinger" (fired three rounds while Thomas was already on the ground defenseless and out of reach of the BB pistol); "Defendant Williams" (three shot fired after Thomas was fully subdued and following Thomas complete physical capitulation); "Defendant McIlvaine" (fired two "excessive" rounds); "Defendant Leder" (fired a rifle three times at Thomas Swinford while "behind cover"); "Defendant Johnson" (fired two

rounds, including one round while Thomas was already on the ground defenseless and out of reach of the BB pistol); "Defendant Greenlow" (fired…three rounds while Thomas was already on the ground defenseless)) Doc. 13-3 at 21-34)

When seeking leave to amend her complaint, Ms. Swinford "attached a copy of the proposed amendment" – and explicitly adopted it – as the law of this Circuit requires. See <u>United States ex rel. Atkins v. McInteer</u>, 470 F.3d 1350, 1362 (11th Cir. 2006); See Doc. 13-3 at 13)  Notwithstanding, like the trial court, the Panel gleaned its "Background facts" for its Opinion from "Mrs. Swinford's Initial complaint".  It then called the originally-filed complaint "the complaint" when stating "…**defendants' body camera footage** tells a different story than **the complaint** regarding the moment that officers started shooting at Thomas."  In doing so, the Panel made "…the legal conclusion that the complaint, as amended, would necessarily fail" without actually considering the version of it the Panel was required to consider.  <u>SFM Holdings, Ltd. v. Banc of Am. Sec., LLC</u>, 764 F.3d 1327, 1344 (11th Cir. 2014)

The Panel implied that prejudice to Appellees was a factor in its decision because "four months had passed" between the filing of a motion to dismiss and Appellant's filing of motion requesting leave to amend the complaint.  ("She sought the court's permissions because more than twenty-one days had passed…indeed,

more than four months had passed…") Doc. 41-1 at 18  In the absence of a showing of prejudice by Appellees of any kind in this case, or even an allegation of prejudice, that issue is wholly immaterial, whether the time period is four months or three years.  See <u>Evans v. Georgia Reg'l Hosp.,</u> 850 F.3d 1248, 1254 (11th Cir. 2017))

Appellant is entitled to a rehearing in this case based on a glaring error of law at the heart of the Panel's Opinion, since it resulted in the adjudication of Appellant's claims of excessive force on the merits based on the consideration of the wrong complaint and the wrong videos.

III.    ERRORS OF FACT IN OPINION

The Panel held that an individual assessment of the facts relating to each respective police officer who fired was not timely raised or preserved for Appeal.

> *[t]he first time that [Appellant] argued to the district court that the officers' actions had to be assessed individually was when she filed her motion to reconsider.  The district court declined to consider this argument, and the late raising of the issue did not preserve the argument for appeal.  Accordingly, we will not consider it….(fn. 13)…Even if we were to consider such an argument, Mrs. Swinford does no explain how an individualized inquiry would have change the outcome of the qualified immunity analysis for any of the officers.*

(Doc. 41-1 at 24)

The Panel could only find that Appellant "did not preserve the argument for appeal" by ignoring the entirety of the proposed amended complaint, as well as the

exhibits attached to it. In the version of the complaint attached to the motion requesting the trial court's leave to amend it, Appellant not only set out – in painstaking detail – the separate actions and circumstances of each police officer who fired upon Swinford, she explicitly adopted the report of Bill Harmening, which provided extraordinary factual detail of the shooting, demarcated by reference to each respective officer who fired. Since the Panel was required by law to conduct its dismissal analysis on the allegations of the complaint *as amended*, the Court erred by holding that Appellant failed to timely request consideration of the separate actions and circumstances of the respective police officers who fired upon Thomas. That conclusion should be obvious in light of the details provided in the complaint as amended, which include the following:

Sergeant Jonathon McIlvaine was armed with a privately owned 5.56 assault rifle and fired twice from a distance of approximately 102 feet. He was posted behind his squad in the church parking lot. He stated during his GBI interview on the day of the shooting that he fired because of the aggressive way in which Thomas presented the gun as he walked toward the officers.[7] He was not asked if he has been properly trained and qualified with his rifle, nor were any training records provided to answer that question. According to ACCPD's internal investigation, McIlvaine admitted that he "dropped" Swinford with one shot, leaving him defenseless, face-down on the pavement with the gun far out of his reach, while other officers continued to fire upon Swinford. Thomas Swinford did not pose a threat of death or serious injury to McIlvaine, since McIlvaine was behind the cover of the engine block of his patrol vehicle.

Officer William Greenlow was armed with a department issued 5.56 assault rifle and fired four times from a distance of approximately 181 feet. He was posted behind the church south of Thomas' location. During his GBI interview on the day of the shooting, he stated that he fired his weapon because he heard a shot and believed it may have come from Thomas.[8] He was not asked if he is properly trained and qualified with the rifle, nor have any training records been provided to answer that question. Given the stealth with which Greenlow moved into his position, and given his cover behind a brick wall, it is doubtful Thomas even knew he was there, and thus, Thomas never posed an imminent threat, or any threat at all, to Greenlow. It is also important to note that from Greenlow's position, he was unable to see any of the other officers. So not only was Thomas never a threat to Greenlow, Greenlow had no ability to even evaluate whether he posed a threat to anyone else. Greenlow fired his four shots over a 3-second span of time. His

first shot was simultaneous with the first shots that were fired, and his remaining three shots were all taken after Thomas was already on the ground.

Officer Joshua Santos was armed with a department issued Glock 9mm pistol and fired four times from a distance of approximately 117 feet. He was posted behind his squad car in the far-left entrance to the church parking lot. During his GBI interview on the day of the shooting, he stated that he fired his weapon because Thomas was pointing the gun at officers. He stated that he fired twice, but after seeing that Thomas was still standing, fired two more times.[9] A review of the video shows that Santos' last two shots were taken while Thomas was already on the ground.

Corporeal Alex Leder was armed with a privately owned 5.56 assault rifle and fired three times from a distance of approximately 122 feet. He was posted in the church parking lot behind the same squad as Officer Santos. During his GBI interview on the day of the shooting,[10] he stated that he fired after hearing another officer fire as Thomas walked toward the officers and raised the gun. Leder was not asked if he was properly trained and qualified with his rifle, and no training records were provided to answer that question. His three shots were fired in rapid succession and because of the angle of his body cam, it could not be determined if Thomas was on the ground at the time of any of the three shots.

Officer Claude Johnson was armed with a department-issued Remington 870 shotgun and fired twice from a distance of approximately 133 feet. He was posted in the grass on the northwest side of the church parking lot to the left of Thomas (facing him). He stated during his GBI interview on the day of the shooting that he fired because Thomas raised the gun toward the officers, and he believed he was going to shoot at them.[11] Johnson fired his first shot immediately the initial shot and as Thomas was falling to the ground. He then manually pumped the shotgun and fired the second time after Thomas was already on the ground.

Officer Oliver Williams Jr. was armed with a department issued Glock 9mm pistol and fired four times from a distance of approximately 159 feet. He was posted in the church parking lot south of Officer Mcilvaine's location. During his GBI interview on the day of the shooting, he stated that he fired his weapon because Thomas had raised the gun toward the officers.[12] Williams Jr. fired all four shots after the initial shot, and three of those shots were after Thomas was already on the ground.

Officer Charles Bidinger was armed with a department issued Glock 9mm pistol and appears to have fired three times from a distance of approximately 165 feet. He was posted in the church parking lot behind the same squad as Officer Williams. During his GBI interview on the day of the shooting, he stated that he fired because Thomas was raising the gun toward the officers.[13] All three shots were taken well after Thomas was already on the ground and were the final shots taken. Bidinger's final shot was 5 seconds after the initial taken by another officer. At the time of the shooting, Bidinger was a new officer still in training.

(Doc. 13-3 at 82-84)

## CONCLUSION

For the foregoing reasons, Mrs. Swinford respectfully requests that the Panel grant a rehearing in this case to allow for a de novo review of the trial court's dismissal based on the complaint as amended and the six bodycam videos it incorporates by reference providing the facts relating to each police officer who employed deadly force.

Respectfully submitted this 25th day of November, 2024.

/s/ John Hollis Baker, Esq.
**John Hollis Baker, Esq.**
Baker & Slider, LLC
Counsel for Appellant
Georgia Bar No. 033797
John@georgialawyerteam.com

<u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of FRAP 32 because, excluding the parts of the document exempted by FRAP 32(f), this document contains 1928 words.  This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

Respectfully submitted this 25th day of November, 2024.

<u>/s/ John Hollis Baker, Esq.</u>
**John Hollis Baker, Esq.**
Baker & Slider, LLC
Counsel for Appellant
Georgia Bar No. 033797
John@georgialawyerteam.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have/will cause the foregoing Petition to be served upon opposing attorneys of record by filing said document within the CM/ECF system which will automatically send electronic notification all opposing counsel.

Respectfully submitted this 25th day of November, 2024.

<u>/s/ John Hollis Baker, Esq.</u>
**John Hollis Baker, Esq.**
Baker & Slider, LLC
Counsel for Appellant
Georgia Bar No. 033797
John@georgialawyerteam.com